UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION

| | |
|---|---|
| EMILY STAKELY<br><br>**PLAINTIFF**<br><br>vs.<br><br>ZAAL VENTURES, INC.<br><br>**DEFENDANT**<br><br><br>Serve by Certified Mail | Case No.:<br><br>ELECTRONICALLY FILED |

**COMPLAINT WITH JURY DEMAND**

## I.  PARTIES

1. Plaintiff Emily Stakely ("Stakely" or "Plaintiff") is a citizen and resident of the Commonwealth of Kentucky, residing at 3138 May Street, Ashland, Kentucky 41102.

2. Stakely is an "employee" of the Defendant, based upon the allegations herein, pursuant to the Fair Labor Standards Act ("FLSA"), Section 34a, and Kentucky wage and hour law.

3. Plaintiff, while working for Defendant, was engaged in interstate commerce.

4. Defendant Zaal Ventures, Inc. ("Zaal" or "Defendant") is a foreign corporation with its registered office located at 1006 Richmond Road, Suite 300, Williamsburg, VA 23185.

1

5.  Zaal is a foreign corporation with its principal office address at 3414 Cutshaw Avenue, Richmond, VA 23230.

6.  Zaal is not registered to do business in the Commonwealth of Kentucky.

7.  However, Zaal employs employees and/or alleged independent contractors in the Commonwealth of Kentucky.

8.  Thus, Zaal was engaged in substantial comings and business activities in the Commonwealth of Kentucky.

9.  Zaal is a stock corporation formed under the laws of Virginia in 2019.

10. Zaal's director of the corporation is Lance Zaal.

11. Zaal's president of the corporation is Lance Zaal.

12. Zaal is currently listed as pending inactive on Virginia's secretary of state website due to an annual registration fee past due and/or penalties unpaid.

## II.  VENUE AND JURISDICTION

13. At all relevant times, Defendant permitted Plaintiff to conduct business on its behalf in this jurisdiction.

14. Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's claims under the Fair Labor Standards Act ("FLSA").

15. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Kentucky state law claims.

16. Venue in this Court is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in this district and Defendant allowed her to work in this district, and a substantial part of the events giving rise to the claim herein occurred in this district.

### III. FACTUAL ALLEGATIONS

17. Defendant operates Junket & US Ghost Adventures ("US Ghost Adventures"), which provides haunted ghost tours in cities throughout the United States.

18. US Ghost Adventures is a national ghost tour and entertainment company that offers nightly ghost tours in over fifty cities across the United States.

19. Defendant utilizes the services of remote workers for multiple job positions, including:

    a. Recruiting Manager;

    b. Hiring Manager; and

    c. Review and Customer Service Coordinator.

20. In fact, Defendant has described itself as a "remote company."

21. Defendant classifies many of its job positions as "independent contractors."

22. However, in reality, many of these positions are "employees" of Zaal, subject to federal and state wage and hour laws.

23. Plaintiff was hired by Defendant on April 17, 2023 as a Review Coordinator.

24. Plaintiff was quickly promoted to Project Coordinator.

25. Plaintiff was then promoted again to Recruiting and Hiring Manager.

26. All three of these roles were advertised as W2 employee positions on Indeed.com.

27. However, Plaintiff was never paid as a W2 employee by the company.

28. Plaintiff was classified as an independent contractor.

29. Defendant had Plaintiff electronically sign an "Independent Contractor Agreement."

30. In this Independent Contractor Agreement, Defendant – referenced as the Company – made the following statements and covenants:

    a. Defendant stated that it "shall have no right to exercise control or discretion over [Plaintiff]'s performance of the Services or in the manner and method in which the Services are performed."

    b. Defendant stated it "will provide no on-the-job training, no direct day-to-day supervision and engage in no regular meetings with [Plaintiff]."

    c. Defendant stated that due to her status, Plaintiff "shall not be entitled to any employee benefits."

    d. The Agreement was clearly laid out to reflect an Independent Contractor relationship with little control by the Company.

    e. However, the Agreement includes a non-compete clause which spans a twenty-mile radius of any city where the Company operates for a period of two years.

31. In reality, Plaintiff had little control over the manner in which she worked.

32. Plaintiff was given extensive on-the-job training.

33. Plaintiff was required to engage in day-to-day supervision.

34. Plaintiff was required to engage in weekly meetings with representatives of Defendant.

35. Despite being classified as an "independent contractor," Plaintiff was reassured that she was entitled to benefits.

36. Plaintiff was economically dependent upon Defendant for work.

37. Plaintiff was paid on a bi-weekly basis.

38. Plaintiff was required to monitor her time at work via a timesheet application.

39. Defendant had substantial control over Plaintiff and over the unlawful policies and practices alleged herein.

40. Defendant had direct and/or indirect control of the terms and conditions of Plaintiff's work.

41. At all relevant times, Defendant maintained control, oversight, and direction over Plaintiff, including, but not limited to, hiring, firing, disciplining, recordkeeping, payroll, pay rates, deductions, and other practices.

42. Defendant is an "employer" of Plaintiff as that term is defined by the FLSA.

43. Defendant is an "employer" of Plaintiff as that term is defined by Kentucky Wage and Hour law.

44. At all relevant times, Defendant has been and continues to be a business engaged in "interstate commerce" as defined by the FLSA.

45. Plaintiff was *not* an exempt employee under the FLSA's definitions.

46. Plaintiff was *not* an exempt employee pursuant to Kentucky wage and hour law.

47. Furthermore, when Plaintiff brought her misclassification to Defendant's attention, they wrongfully terminated her.

48. On May 16, 2023, Lance Zaal, the CEO of the Defendant company, sent a mass email out to employees and independent contractors.

    a. In the email, Mr. Zaal stated: "Many have requested moving from W2 to 1099 to save and take advantage of several tax benefits and deductions. I said no, but have been convinced to reconsider. Marcus and I will speak to each person about this individually, but the important thing is that there are no changes to benefits."

49. On May 31, 2023, Plaintiff received an email stating that she would be on 1099 status but would still qualify for benefits. The email also stated that they will not keep copies of her paystubs.

50. On June 20, 2023, Plaintiff asked her Chief Human Resources ("HR") Officer about the misclassification.

    a. Plaintiff asked "Am I an employee or 1099 contract?" This question was based upon use of the Desktop Time Doctor software for time monitoring.

    b. The Chief HR Officer responded that 1099 contractors must also use Desktop Time Doctor.

    c. Plaintiff stated she believes this to be a violation if she is a 1099 contractor and that it could violate IRS laws.

    d. The Chief HR Officer stated she would discuss it with one of Plaintiff's supervisors, Josef Kruger.

    e. Josef Kruger was the Director of Operations and Experiences with Junket & US Ghost Adventures.

    f. Upon information and belief, Mr. Kruger is still the Director of Operations and Experiences.

51. On June 27, 2023, Plaintiff had a meeting with Josef Kruger and Marcus Sanchez, to specifically discuss Plaintiff's "concerns" regarding the Independent Contractor, 1099 issues.

    a. Mr. Kruger stated it was "less about" what an independent contractor was, and more about the company's procedures and expectations.

    b. Mr. Kruger stated that, despite what an independent contractor is required or not required to do, Plaintiff had agreed via the Independent Contractor Agreement to certain requirements.

    c. Mr. Kruger specifically said this meeting was about what the company expects from "its employees."

d. Mr. Kruger offered her two options: "go back" to a W2 employee or be an independent "freelancer."

e. Plaintiff stated a concern that she felt people did not understand the difference between employee and independent contractors.

f. Plaintiff mentioned she had spoken to an attorney.

g. Plaintiff stated she had called the IRS to understand how to file her taxes and that the IRS had told her she should be classified as a W2 employee.

h. Mr. Kruger stated it was not about "what the IRS said," but what the company's policy was.

i. Mr. Kruger stated that if she became a W2 employee, the expectations "would be exactly the same."

j. Mr. Kruger said she could either go back to $16 an hour on a project basis or go back to being a W2 employee.

k. Plaintiff stated she would prefer to be a W2 employee.

l. Mr. Kruger then ended the conversation and stated they need to reschedule the conversation.

52. After the meeting, Plaintiff was immediately cut off from all her work accounts and logins.

53. On June 29, 2023, the Chief HR Officer emailed Plaintiff, stating she was terminated effective immediately.

a. The email stated that the decision was "made following a series of discussions, attempts to address and rectify the concerns that have arisen during your tenure with the company."

    b. Defendant alleged that Plaintiff's work performance "consistently fell below the required standards set for [her] position."

    c. However, Plaintiff had received two promotions during her time of employment.

    d. Plaintiff had never received disciplinary action or notices of deficiencies.

    e. Plaintiff was also told to refrain "from any communication with members of the team – with the exception of Human Resources."

54. Plaintiff worked for Defendant from April 17, 2023 to June 29, 2023.

55. Plaintiff was paid an annual salary of $42,000.

    a. Based upon this annual salary, Plaintiff was paid $807.69 per week.

    b. Based upon this annual salary and a 40-hour work week, Plaintiff was paid $20.19 per hour.

56. Plaintiff worked approximately 52-54 hours per week each week during her time of employment.

57. Plaintiff was not paid overtime.

58. Plaintiff was required to incur and/or pay job-related expenses, including but not limited to cell phone service, internet service, computer equipment, and any other equipment necessary for completing her job duties.

59. Plaintiff was not reimbursed for any expenses incurred relating to her work.

60. Plaintiff was forced to pay costs and taxes out of her paycheck that should have been deducted.

61. Defendant has failed to pay Plaintiff as required by law.

62. Because Defendant misclassified Plaintiff as an independent contractor, Defendant was able to financially gain.

    a. Defendant was never licensed or registered as a business operating in Kentucky.

    b. Defendant never paid into Kentucky's unemployment insurance fund.

    c. Defendant never paid any Kentucky workers' compensation insurance.

    d. Defendant never paid any Kentucky employee taxes.

63. Defendant misclassified employees in many states for the purpose of financial gain.

## COUNT I: FLSA MISCLASSIFICATION

64. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

65. Plaintiff was misclassified as an independent contractor by Defendants.

66. Despite the label placed on her relationship with Defendant, Plaintiff was an employee of Defendant under the FLSA.

67. Upon information and belief, Defendant required and continued to require Plaintiff to pay for job-related expenses out of pocket and failed to properly reimburse Plaintiff.

68. Upon information and belief, when accounting for unpaid expenses, Defendant paid Plaintiff less than federal minimum wage for the hours they worked.

69. By the acts and conduct above, Defendant willfully violated the provisions of the FLSA and disregarded the rights of the Plaintiff.

70. Plaintiff has been damaged by Defendant's willful failure to pay minimum wage as required by law.

71. As a result of Defendant's willful violations, Plaintiff is entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## COUNT II: KENTUCKY WAGE AND HOUR LAW MISCLASSIFICATION

72. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

73. Plaintiff was misclassified as an independent contractor by Defendants.

74. Despite the label placed on her relationship with Defendant, Plaintiff was an employee of Defendant under Kentucky wage and hour law.

75. Upon information and belief, Defendant required and continued to require Plaintiff to pay for job-related expenses out of pocket and failed to properly reimburse Plaintiff.

76. Defendant did not provide Plaintiff with lunch periods as required by K.R.S. § 337.355.

77. Defendant did not provide Plaintiff with paid rest periods as required by K.R.S. § 337.365.

78. Upon information and belief, when accounting for unpaid expenses and extra time worked, Defendant paid Plaintiff less than Kentucky minimum wage for the hours she worked.

79. By the acts and conduct above, Defendant willfully violated the provisions of Kentucky wage and hour law and disregarded the rights of the Plaintiff.

80. Plaintiff has been damaged by Defendant's willful failure to abide by Kentucky wage and hour law.

81. As a result of Defendant's willful violations, Plaintiff is entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## COUNT III: FLSA NON-PAYMENT OF OVERTIME

82. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

83. Plaintiff worked more than forty hours in one or more workweeks.

84. Defendant did not pay Plaintiff at least one and a half times her regular rate for time worked in excess of forty hours per week.

85. Plaintiff was paid on an annual salary basis.

86. Plaintiff was not given any credit for overtime hours worked.

87. By not paying Plaintiff proper overtime wages for time worked in excess of forty hours in a workweek, Defendant has willfully violated the FLSA.
88. As a result of Defendant's willful violations, Plaintiff is entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

### COUNT IV: KENTUCKY NON-PAYMENT OF OVERTIME

89. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.
90. Plaintiff worked more than forty hours in one or more workweeks.
91. Defendant did not pay Plaintiff at least one and a half times her regular rate for time worked in excess of forty hours per week.
92. Plaintiff was paid on an annual salary basis.
93. Plaintiff was not given any credit for overtime hours worked.
94. By not paying Plaintiff proper overtime wages for time worked in excess of forty hours in a workweek, Defendant has willfully violated Kentucky wage and hour laws, specifically, K.R.S. § 337.285.
95. As a result of Defendant's willful violations, Plaintiff is entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

### COUNT V: WRONGFUL DISCHARGE

96. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.
97. Under Kentucky law, an at-will employee may not be terminated for a reason that contravenes a fundamental and well-defined public policy as evidenced by existing law.
98. Kentucky has a strong public policy, as evidenced by KRS Chapter 337, of ensuring that employees are properly classified and compensated for their labor and work.

99. Plaintiff engaged in protected activity by bringing her (and other employees') misclassification to Defendant's attention.

100. Defendant was aware of Plaintiff's protected activity.

101. Defendant terminated Plaintiff on June 29, 2023.

102. Plaintiff's termination was causally related to and motivated by Plaintiff's protected activity.

103. The temporal proximity between Plaintiff's protected activity and her termination supports an inference of retaliatory motive.

104. Defendant's purported motive for terminating Plaintiff was pretextual and designed to mask the true motive.

105. Defendant's termination of Plaintiff violates the public policy of the Commonwealth of Kentucky.

106. As a direct result of Defendant's actions, Plaintiff has suffered and continues to suffer economic losses, mental suffering, and emotional distress.

107. As a result of Defendant's actions, Plaintiff is entitled to damages, including, but not limited to, unpaid wages, lost wages and benefits, emotional distress, humiliation, embarrassment, damage to professional reputation, costs, and attorneys' fees.

### COUNT VI: RETALIATION

108. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

109. Defendant wrongfully discharged Plaintiff.

110. Defendant was motivated by an ill motive, designed to retaliate against Plaintiff for exposing Defendant's misclassification of employees.

111. Kentucky has a strong public policy, as evidenced by KRS Chapter 337, of ensuring that employees are properly classified and compensated for their labor and work.

112. Plaintiff engaged in protected activity by bringing her (and other employees') misclassification to Defendant's attention.

113. Defendant was aware of Plaintiff's protected activity.

114. Defendant terminated Plaintiff on June 29, 2023 in retaliation for Plaintiff engaging in protected activity.

115. Defendant's termination of Plaintiff violates the public policy of the Commonwealth of Kentucky.

116. As a direct result of Defendant's actions, Plaintiff has suffered and continues to suffer economic losses, mental suffering, and emotional distress.

117. Defendant willfully violated Plaintiff's rights.

118. As a result of Defendant's actions, Plaintiff was injured and damaged.

119. As a result of Defendant's actions, Plaintiff is entitled to damages, including, but not limited to, unpaid wages, lost wages and benefits, punitive damages, costs, and attorneys' fees.

### COUNT VII: TIMELY PAYMENT OF WAGES

120. Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

121. K.R.S. § 337.020 provides that an employer must pay all wages owed to its employees as often as semimonthly.

122. Defendant herein has failed to pay overtime wages or full wages, based upon unreimbursed expenses, to Plaintiff.

123. As such, Defendant has not paid *all* wages owed to Plaintiff in a timely manner.

124. By not paying Plaintiff in a timely manner, Defendant has willfully violated Kentucky wage and hour law.

125. As a result of Defendant's willful violations, Plaintiff is entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, and each of them, individually, jointly and severally and requests compensatory damages, together with interest, cost of suit, attorneys' fees, and all such other relief to which Plaintiff may be entitled as well as follows:

   a. For trial by jury;

   b. For compensatory damages, including unpaid wages and lost wages, as well as any other compensatory damages to which she is entitled herein;

   c. For liquidated damages;

   d. For punitive damages in an amount to be determined by a jury herein:

   c. For interest and costs herein expended, as well as attorney fees; and

   d. For any and all other relief to which Plaintiff may be entitled.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/Erica F. Blankenship*
Erica F. Blankenship, Esq. (96369)
Ziegler & Schneider, P.S.C.
541 Buttermilk Pike, Suite 500
P.O. Box 175710
Covington, KY 41017-5710
Telephone: (859) 426-1300

Email: efblankenship@zslaw.com