IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRIT OF KENTUCKY
NORTHERN DIVISION AT ASHLAND

| | | |
|---|---|---|
| **EMILY STAKELY,** | ) | |
| | ) | **CASE NO: 0:24-CV-00096- DLB-EBA** |
| Plaintiff | ) | |
| | ) | |
| v. | ) | DISTRICT JUDGE: |
| | ) | DAVID L. BUNNING |
| **ZAAL VENTURES, INC.,** | ) | |
| | ) | MAGISTRATE JUDGE: |
| Defendant | ) | EDWARD B. ATKINS |

**RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Comes now Plaintiff Emily Stakely ("Stakely"), by and through counsel, and hereby submits her response in opposition to Defendant's ("Zaal") Motion to Dismiss. On October 11, 2024, Stakely filed her Complaint against Zaal claiming in part that Zaal misclassified her as an independent contract worker, failed to reimburse her for job-related expenses, and failed to pay her overtime for time worked in excess of forty hours per week (hereinafter referred to as "wage claims"). Defendant filed its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) alleging this Court lacks subject matter jurisdiction because the wage claims have been satisfied, thus rendering them moot. Stakely's wage claims should not be dismissed. Defendant's motion misconstrues the facts regarding tendered payment to Stakely for "full relief" of her wage claims. There is still a live case and controversy.

I.       **DEFENDANT'S MOTION VIOLATES PROCEDURAL RULES.**

As stated, Plaintiff filed her Complaint on October 11, 2024. Doc. # 1. Defendant was finally served with the Complaint on March 17, 2025. Doc. # 15. Defendant timely filed their Answer on April 17, 2025. Doc. # 8. Defendant did **<u>not</u>** file any pre-pleading motions. The parties filed their Joint Discovery Report on May 23, 2025. Doc. # 16. The Court entered deadlines in accordance with the parties' Joint Report. Doc. # 19. Plaintiff served discovery requests upon Defendant on June 24, 2025. Rather than answering discovery as required, Defendants filed this completely frivolous Motion to Dismiss. *See* Doc. # 20. However, even to begin this response in opposition, the Motion fails in several ways procedurally.

A.       **Violation of Fed. Rul. Civ. P. 12(b)(1).**

Defendant makes its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), claiming a lack of subject matter jurisdiction. However Rule 12(b) clearly states that "[a] motion asserting any of these defenses must be made *before* pleading if a responsive pleading is allowed." Defendant has already filed its Answer and did not file any pre-pleading motions.

B.       **Defendant Attempts to Request Summary Judgment Prior to Any Discovery and Without Utilizing the Correct Standard or Law.**

Defendant disguises its Motion as a motion to dismiss based upon a lack of subject matter jurisdiction. However, this is simply a façade. Defendant wants this Court to make a finding based upon evidence that Plaintiff has never seen, evidence that has never been exchanged in discovery, documents that are so heavily redacted that they can barely be read, unverified statements and documents, and yet, expects this Court to rely upon the authenticity and veracity of those statements and documents and dismiss Plaintiff's claims.

"[Federal Rule of Civil Procedure] 12(d) requires that district courts treat motions to dismiss as motions for summary judgment under Rule 56 if matters outside the pleadings are

presented as part of the original motion and are not excluded by the district court." *DeAngelo v. Vanderbilt Univ.*, 821 Fed. App'x. 471,. 479 (6th Cir. 2020); *see also Pulsifer v. Westshore Christian Acad.*, No. 24-2092, 2025 U.S. App. LEXIS 16876, at *5-7 (6th Cir. July 9, 2025).

If this Court applies the summary judgment standard, it will see that multiple genuine issues of material fact still remain regarding the wage claims. *See Randle v. Lewis*, No. 24-1888, 2025 U.S. App. LEXIS 10728, at *8 (6th Cir. May 1, 2025) ("Federal Rule of Civil Procedure 56 provides two primary ways for a nonmovant to avoid summary judgment. One is to show a 'genuine dispute as to any material fact…" The other is to notify the district court that additional discovery is necessary …"). Further, **absolutely no discovery has taken place in this case**. Defendant has not even answered Plaintiff's first discovery requests. Plaintiff cannot respond to the veracity of these claims without seeing the unredacted, verified documents that have been requested in discovery.[1]

## II. DEFENDANT ATTEMPTS TO MOOT THIS CLAIM WITHOUT AUTHORIZATION, CONSENT, OR ANY KIND OF SETTLEMENT OF TERMS.

A case in the District of Arizona handled this exact issue, dealing with almost all of the points made herein, so it will be discussed in depth. In *Pridemore v. Colter Electric, LLC*, 668 F.Supp.3d 874 (D. Ariz. 2023), plaintiff brought a claim for unpaid wages – his final paycheck— on September 28, 2022. *Id*. at 876. On September 30, 2022, plaintiff received his final paycheck via direct deposit. *Id*. Plaintiff mailed a check to his attorney in the same amount of the final paycheck, writing direct deposit return in the memo line. *Id*. On November 3, 2022, a day after plaintiff's counsel was notified of defendant's representation, plaintiff's counsel notified defense counsel via email that plaintiff had rejected tendered wages. *Id*. Defense counsel responded,

---

[1] Exhibit 1, Plaintiff's First Set of Discovery Requests.

rejecting the rejection. *Id*. at 876-77. Defendants moved the Court to dismiss the case for mootness and lack of subject matter jurisdiction. *Id*. at 876.

Defendants argued that they had deposited an amount into plaintiff's account that was far more than any amount plaintiff could recover for unpaid wages, including liquidated damages, thus causing his claim to be moot, and the Court to lack subject matter jurisdiction over the case. *Id*. at 877-78. The Court stated that, "[e]ven accepting that [] it is possible for an employer to moot an employee's FLSA lawsuit by making a successful post-lawsuit tender of the full recoverable amount" the defendants had not successfully done so there. First, "the FLSA also provides for the recovery of costs and reasonable attorneys' fees[,]" which had not been included in the defendants' tendered payment. Because the Court found the tendered payment would not have covered the wages, fees, and what it deemed reasonable attorneys' fees, it "was not large enough to conclusively moot Plaintiff's FLSA claim." *Id*. at 879-80.

Additionally, "[p]laintiff took immediate steps to decline to accept the tendered funds." *Id*. at 880.

> The Court acknowledges that the funds apparently remain deposited in [p]laintiff's bank account, but this is not by [p]laintiff's choice—instead, it is due to the happenstance of [d]efendants' unilateral ability to direct-deposit funds into [p]laintiff's bank account (which, presumably, existed only by virtue of the parties' former employment relationship). But for that happenstance, [d]efendants would have been required to offer the funds to [p]laintiff and [p[laintiff would have been free to reject them.

*Id*.

Based upon these findings and holdings, the Court denied the Defendants' motion to dismiss. *Id*.

As this Court can see, this case is exactly on point and Plaintiff will explain why this case should also not be dismissed as there is still a live case or controversy and Defendant has not successfully mooted a claim.

### A. The Payment Was Made Without Knowledge, Authorization, or Consent of Plaintiff or Plaintiff's Counsel.

Defendant's Exhibit 2, Doc. # 20-3, which shows the direct deposit into Plaintiff's bank account, also shows that the transaction was sent on June 27, 2025 at 10:20 AM. The motion to dismiss was filed the **same day** as the deposit was made, before it even cleared into Plaintiff's account. Defendant strategically timed the deposit so that the Motion to Dismiss would be filed before Plaintiff *or Plaintiff's Counsel* had any notice of the transaction. Thus, Plaintiff had no opportunity to even understand what the tendered payment was for before the motion to dismiss was filed! Plaintiff has not been given any unredacted documents proving that the *estimated* calculations for her overtime pay is correct. Defendant has not verified the authenticity of the documents allegedly supporting its calculations of Plaintiff's overtime pay. How can Plaintiff – or this Court – judge the veracity or authenticity of Defendant's offer when there has been nothing verified or sworn to that supports the calculation? The simple answer is that it cannot.

Defendant made this deposit without knowledge, authorization, or consent of Plaintiff. Plaintiff had not given Defendant any ongoing authority to make direct deposits into her account after the employment relationship had ended. As stated in *Pridemore*, Defendants were able to undertake these actions "due to the happenstance of Defendants' unilateral ability to direct-deposit funds into Plaintiff's bank account (which, presumably, existed only by virtue of the parties' former employment relationship). But for that happenstance, Defendants would have been required to offer the funds to Plaintiff and Plaintiff would have been free to reject them." *Pridemore*, 668 F.Supp.3d at 880.

### B. There Can Be No Settlement of Claims Without Consent and Release of Both Parties.

Defendant attempts to present this tendered payment as a full payment of all wage claims; but, given that this is a lawsuit, what Defendant has attempted to do is to *settle* these wage claims

without agreement of the Plaintiff! "Settlement agreements are essentially a type of contract, and as such, they are subject to contract principles." *Cope v. Gateway Area Dev. Dist., Inc.*, No. 0:14-CV-00017-HRW, 2017 U.S. Dist. LEXIS 39463, at *3-4 (E.D. Ky. Mar. 20, 2017) (citing *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 487 (6th Cir. 1973)). "[W]hen there is a question regarding the existence of a valid settlement agreement between parties, the substantive law governing contracts generally should be applied." *Cope*, 2017 U.S. Dist. LEXIS 39463, at *4 (citing *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992)). "A meeting of the minds, or mutual *assent* to the terms of a settlement, is *essential* to the formation of an enforceable settlement agreement. There must be complete agreement on all material terms." *Snowden v. City of Wilmore*, 412 S.W.3d 195, 206 (Ky. App. 2013) (quoting 15B Am.Jur.2b *Compromise and Settlement* § 7). Defendant cannot unilaterally make an offer, force an acceptance of the offer by Plaintiff by directly depositing the funds into her account, and then simply stating that it is a full and valid payment of the claims. This is a unilateral contract that cannot be supported under contract law.

### C. The Payment Has Been Moved to Plaintiff's Counsel's Escrow Account and Has Not Been "Accepted."

On July 2, 2025, Plaintiff's Counsel emailed Defendant's Counsel, stating that the tendered amount was "paid without authorization or acceptance."[2] Plaintiff was unable to stop or reverse the transfer so the tendered payment was submitted to Plaintiff's Counsel's escrow account. On July 11, 2025, Plaintiff successfully completed transferring the $10,000 tendered payment into Plaintiff's Counsel's escrow account.[3] Plaintiff has not accepted these funds. Plaintiff's Counsel

---

[2] Exhibit 2.
[3] Exhibit 3.

has verbally rejected this offer. Plaintiff does not have use of these funds. Nothing has been accepted by Plaintiff from the Defendants.

"[A]n unaccepted settlement offer has no force. Like other unaccepted contract offers, it creates no lasting right or obligation." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). Plaintiff has not accepted any offer from the Defendant. Therefore, it has created no lasting rights or obligations. As an unaccepted offer, it cannot *moot* the Plaintiff's very real and very live claims pursuant to the FLSA.

    **D.**    **There are Several Live Claims, Even Without the Wage Claims.**

Defendant claims that because the wage claims are now moot, there is no live claim or controversy and the claims must now be dismissed. "Where there is no real, substantial controversy between parties having adverse legal interests, there is no case or controversy in the constitutional sense." *Lindke v. Tomlinson*, 31 F.4th 487, 491 (6th Cir. 2022) (quoting *Ahmed v. Univ. of Toledo*, 822 F.2d 26, 27 (6th Cir. 1987)). However, Plaintiff's Complaint did <u>not</u> solely bring a claim related to unpaid overtime wages. Plaintiff's claims are as follows:[4]

    Count I: FLSA Misclassification;

    Count II: Kentucky Wage and Hour Law Misclassification;

    Count III: FLSA Non-payment of Overtime;

    Count IV: Kentucky Non-payment of Overtime;

    Count V: Wrongful Discharge;

    Count VI: Retaliation; and

    Count VII: Timely Payment of Wages.

---

[4] *See* Doc. # 1.

"Subject matter jurisdiction defines the court's authority to hear a given type of case." *Carlsbad Tech, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (quoting *United States v. Morton*, 467 U.S. 822, 828 (1984)). "[W]hether a court has subject-matter jurisdiction over a claim is distinct from whether a court chooses to exercise that jurisdiction." *Carlsbad*, 556 U.S. at 639 (citations omitted). For example, the Court cited to the fact that in a case bringing federal law claims and pendent state law claims, even if the Court dismisses all federal claims, the Court may choose to exercise its discretion to retain jurisdiction over the pendent state law claims. *See id*. at 639-40 (citations omitted).

Plaintiff maintains that Defendant has not *mooted* the wage claims because it has failed to conclusively show that the tendered payment is an adequate full tender, as will be established *supra*. However, even if it was, Plaintiff also maintains that the Court may still maintain jurisdiction over the remaining live and active claims.

### III. DEFENDANT'S MOTION MAKES FACTUAL ASSUMPTIONS THAT CANNOT BE PROVEN AT THIS PROCEDURAL JUNCTURE.

As stated previously, no discovery has been completed in this case. The exhibits that Defendant provided in support of its Motion have never been provided to Plaintiff before being attached to the Motion (in a highly redacted form). Defendant bases its entire Motion upon these report exhibits yet that creates a faulty premise. Defendant's entire argument attempts to circumvent the procedural protections of the FLSA.

#### A. Defendant Utilizes Time Doctor Documents that have Never Been Provided, Verified, or Seen Unredacted.

In its Motion, Defendant attaches over one hundred pages of alleged "Time Doctor" Reports, that are supposed to show the daily hours tracked by Plaintiff. These documents were never provided to Plaintiff prior to the Motion to Dismiss. They have never been provided to

Plaintiff in their unredacted form. The reports have never been provided with any kind of authentication or verification from Time Doctor to ensure their authenticity.

Further, unless Defendant concedes that every single minute of Plaintiff's work was *required* to be logged and tracked by Time Doctor (a fact weighing heavily toward finding that Plaintiff was a W2 employee rather than actually an independent contractor), Plaintiff cannot concede that Time Doctor covers ever single minute of Plaintiff's work time. Plaintiff also has calendars and emails that would show work activity that are potentially in *addition* to the Time Doctor Reports. These documents are in the care and custody of the Defendants and ***have not been provided***.

Thus, a genuine issue of material fact remains as to Plaintiff's hours worked during the time she was engaged in a working relationship with Defendant.

### B. Defendant Makes a Factually Insufficient Calculation.

"FLSA § 16 provides that an employer who violates the FLSA 'shall be liable to the employee … affected in the amount of their unpaid wages, or their unpaid overtime compensation, … and in an additional equal amount as liquidated damages.'" *Saglimbene v. Venture Indus. Corp.*, 895 F.2d 1414 (6th Cir. 1990) (quoting 19 U.S.C. § 216(b))." Specifically, the statute requires employers to compensate employees at one and one-half times their regular rate for each hour worked in excess of 40 hours per week." *Walsh v. KDE Equine, LLC*, 56 F.4th 409, 413 (6th Cir. 2022) (citing 29 U.S.C. § 207(a)(1)). To make this calculation, the parties must know the "regular rate," which "is generally defined by the total weekly pay divided by the weekly hours." *Walsh*, 56 F.4th at 1413 (citing 29 U.S.C. § 207(e) and 29 C.F.R. § 778.109). "All employees that fall within this provision are 'entitled to overtime pay calculated in this way, whether the employer

pays them on an hourly basis or not.'" *Walsh*, 56 F.4th at 1413 (quoting *Acosta v. Min & Kim, Inc.*, 919 F.3d 361, 363 (6th Cir. 2019)).

It is the *employer's* responsibility to maintain the records that will allow these calculations to be made. Employers "must make, keep, and preserve such records of the persons employed by [them] and of the wages, hours and other conditions and practices of employment maintained by [them] … as necessary or appropriate for the enforcement of the provisions of the FLSA." *Acosta v. Off Duty Police Servs.*, 915 F.3d 1050, 1062-63 (6th Cir. 2019) (quoting 29 U.S.C. § 211(c)). Defendant employer must have maintained all of Plaintiff's records, which must now be disclosed and turned over so that Plaintiff can review and verify these records to ensure that her estimation of her unpaid wages is correct.

Defendant has yet to provide any of these employment records. Thus, Plaintiff has not yet verified her salary, "regular rate," "work week," or hours worked from these records. Plaintiff cannot authenticate or verify the total amount of unpaid wages owed until these records have been produced. Neither can the Court simply rely upon the Defendant's "word" that these unverified records prove that this is the most Plaintiff could ever recover and therefore the claims are now absolutely moot.

Pursuant to the FLSA, Plaintiff is also entitled to liquidated damages and reasonable attorneys' fees. Liquidated damages rely entirely on an accurate calculation of the unpaid wages; therefore, once again, without the records to verify the calculations, there remains a genuine issue of material fact as to the correct amount of liquidated damages owed.

Defendant also argues that they are not required to include attorneys' fees in their tendered payment since this payment is not a "favorable judgment," under the FLSA and attorneys' fees are only required to be paid when there is a "favorable judgment" for the employee. This closed and

narrow minded understanding of the FLSA attorneys' fees provision misinterprets the entire reason for the FLSA attorneys' fee provision.

29 U.S.C. § 216(b) provides that in these kinds of actions, "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Askew v. Inter-Cont'l Hotels Corp.*, 620 F.Supp.3d 635, 638 (W.D. Ky. 2022) (quoting 29 U.S.C. § 216(b)). "The very reason that the FLSA [] mandate[s] an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them." *Rembert v. A Plus Home Health Care Agency, LLC*, 986 F.3d 613, 617 (6th Cir. 2021). Further, in *Pridemore*, the Court stated that even if the defendant there could moot a claim by making a full tender of the recoverable amount, the defendant would have had to have included reasonable attorneys' fees and costs to be considered a full tender of all amounts recoverable. *Pridemore*, 668 F.Supp.3d at 879-80.

### IV.     CONCLUSION.

Defendant here cannot bypass the intention of the FLSA by making a post-lawsuit tender, without authorization of the Plaintiff, without consent of Plaintiff or Plaintiff's counsel, refuse to pay costs or fees, and expect this Court to simply dismiss the unpaid wages claims. Further, Defendant attempts to circumvent the intention of the FLSA by refusing to pay reasonable attorneys' fees when the FLSA provides for payment of fees even when the unpaid wages are minimal to allow for employees to engage competent attorneys in these kinds of cases and pursue their rights. Defendant also attempts to rely upon documents that Plaintiff has not fully seen, cannot verify or authenticate, and expects both Plaintiff and the Court to simply accept that its calculations are correct. Plaintiff expects to be able to engage in the litigation process to ensure that her rights are being protected and honored. Defendant must also permit this process to take place and cannot

unilaterally cut off the litigation by making a payment via direct deposit without consent into an account that Defendant only had access to by nature of the employee-employer relationship between Plaintiff and Defendant!

For all the reasons stated herein, Plaintiff respectfully requests that this Court **DENY** the Defendant's Motion to Dismiss and order that the Defendant engage in the discovery process which has only just begun.

Respectfully submitted,

*/s/ Erica F. Blankenship*
Erica F. Blankenship
Ziegler & Schneider, PSC
541 Buttermilk Pike, Suite 500
PO Box 175710
Covington, KY 41017
(859) 426-1300
efblankenship@zslaw.com

*Counsel for Plaintiff, Emily Stakely*

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing was served via the PACER electronic filing system this 17th day of July, 2025, which shall distribute to the following:

Frederick H. Schutt
Woods Rogers Vandeventer Black, PLC
901 East Burd Street, Suite 1600
Richmond, Virginia 23219
Fred.schutt@woodsrogers.com

Leah M. Stiegler
Woods Rogers Vandeventer Black, PLC
901 East Burd Street, Suite 1600
Richmond, Virginia 23219
Leah.stiegler@woodsrogers.com

Derrick T. Wright
Sturgill, Turner, Barker & Moloney, PLLC
333 West Vine Street, Suite 1500
Lexington, KY 40507
dwright@sturgillturner.com

                                            */s/ Erica F. Blankenship*
                                            Erica F. Blankenship