UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:24-CV-00096-EBA

EMILY STAKELY,                                                                                                     PLAINTIFF,

V.                            **MEMORANDUM OPINION & ORDER**

ZAAL VENTURES, INC.,                                                           DEFENDANT.

*** *** *** ***

This matter is before the Court on a motion to dismiss filed by Defendant Zaal Ventures, Inc. (Zaal). [R. 20]. Upon direction of the presiding judge, and with the parties' consent, this matter was assigned to the undersigned to conduct all further proceedings, including entry of judgment, pursuant to 28 U.S.C. § 636(c). [R. 16; R. 18]. The motion, now having been fully briefed, [R. 21; R. 22], is ripe for review. For the reasons that follow, Zaal's motion to dismiss will be denied.

**I.**

Plaintiff Emily Stakely alleges that she worked for Zaal from April 17, 2023, to June 29, 2023. [R. 1 at pg. 8]. Stakely was paid an annual salary of $42,000 and, during the time she worked for Zaal, worked approximately 52-54 hours per week. [*Id.*]. However, Stakely believed that Zaal improperly classified her as an independent contractor, when she should have been deemed a W-2 employee. [*Id.* at pgs. 3, 8]. After raising this misclassification concern with Zaal's Chief Human Resources Officer, she had a meeting with several other supervisors on June 27, 2023, to discuss the matter. [*Id.* at pgs. 5–7]. Two days later, on June 29, 2023, Stakely received an email notifying her that she was being terminated effective immediately. [*Id.* at pg. 7].

On October 11, 2024, Stakley filed her complaint, bringing, as relevant to this motion, claims under the Fair Labor Standards Act (FLSA) (Count III) and the Kentucky Wages and Hours Act (KWHA) (Count IV) for non-payment of overtime, and a second claim under the KWHA for untimely payment of wages (Count VII). [*Id.* at pgs. 10-11, 13]. Zaal filed its answer on April 17, 2025, [R. 8], and the Court entered a Scheduling Order on May 29, 2025. [R. 19].

On June 27, 2025, in an attempt to resolve Counts III, IV, and VII, Zaal tendered $10,000 to Stakely by direct deposit into her checking account. [R. 20-1 at pg. 3; R. 20-3]. Upon receipt, Stakley contacted her counsel and indicated that she did not want to resolve these claims against Zaal, so her counsel notified Zaal's counsel on July 2, 2025, that the tendered amount was being rejected because it was "paid without authorization or acceptance." [R. 21-2]. By July 11, 2025, Stakely had completely transferred the $10,000 from her checking account to her counsel's escrow account for holding. [R. 21-3].

On the same day it transferred the funds into Stakely's account, Zaal filed this motion to dismiss. [R. 20]. It argues that, because it "tendered full and complete relief" to Stakely for her FLSA and KWHA claims under Counts III, IV, and VII, inclusive of liquidated damages and interest, these claims should be dismissed as moot. [R. 20-1 at pg. 9]. In response, Stakely argues that these claims are not moot because she did not consent or authorize Zaal to make any payment into her account, nor is the amount Zaal tendered based on a factually sufficient calculation because, *inter alia*, it does not account for attorney's fees. [R. 22 at pgs. 3–11]. Zaal, in reply, argues that it does not need to obtain Stakely's consent to moot her claims. [R. 23 at pgs. 3–4]. Zaal also contends that, because it calculated its payment to Stakely based on the allegations made in her complaint, any argument that its payment was improperly calculated implicitly fails. [*Id.* at pgs. 2–3]. Thus, because Stakely's only remaining interest in her FLSA and KWHA claims is

attorney's fees, Zaal believes that no Article III controversy remains, so Counts III, IV, and VII of Stakely's complaint should be dismissed for lack of subject-matter jurisdiction. [*Id.* at pgs. 4–5].

## II.

As a preliminary matter, Stakely contends that Zaal's motion to dismiss under Rule 12(b)(1) is untimely because it did not raise the issue in its answer or other pre-pleading filing. [R. 21 at pg. 2]. Rule 12(b) does require that some defenses must be asserted before an answer is filed, but "challenges to subject-matter jurisdiction may be raised by the defendant at any point in the litigation, and courts must consider them *sua sponte.*" *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541, 548 (2019) (internal quotations omitted) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)); *see also* FED. R. CIV. P. 12(h)(3). Accordingly, the argument is unavailing.

Stakely also argues that Zaal's motion is more properly characterized as a Rule 56 motion for summary judgment because it provides evidence outside of the complaint in support. [R. 21 at pgs. 2–3]. Rule 12(b)(1) provides that an action should be dismissed where the court lacks subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). "How the court resolves a subject-matter jurisdiction challenge depends on whether the motion presents a facial attack or a factual attack." *Gaetano v. United States*, 994 F.23d 501, 505 (6th Cir. 2021) (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)).

"A facial attack on the subject-matter jurisdiction alleged in the complaint questions merely the sufficiency of the pleading." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "When reviewing a facial attack, a district court takes the allegations in the complaint as true," and "[i]f those allegations establish federal claims, jurisdiction exists." *In re Flint Water Cases*, 482 F.Supp.3d 601, 615 (E.D. Mich. 2020) (internal quotations omitted) (collecting cases).

Factual attacks, on the other hand, "raise[] a factual controversy requiring the district court to weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 817 (6th Cir. 2017) (internal quotations omitted) (quoting *Gentek Bldg. Prod.*, 491 F.3d at 330). No presumption of truthfulness applies to the plaintiff's allegations, and the court has substantial discretion in considering evidence outside the four corners of the complaint. *Gentek Bldg. Prod.*, 491 F.3d at 330 (collecting cases). Importantly,

> A district court engages in a factual inquiry only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim. If the jurisdictional issue is intertwined with the underlying substantive merits of the case, such evidentiary decisions should await a determination of the case on the merits.

*In re Flint*, 482 F.Supp.3d at 615–16 (internal citations omitted) (collecting cases). Thus, only where the merits of a plaintiff's claims are implicated should a court convert a Rule 12(b)(1) motion to dismiss to a Rule 56 motion for summary judgment. *See Wright v. United States*, 82 F.3d 419, 1996 WL 172119, at *4 (6th Cir. Apr. 11, 1996) (table decision).

Here, Zaal's motion factually attacks this court's subject-matter jurisdiction because it relies on evidence outside of the pleadings. *See Gaetano*, 994 F.3d at 505 (finding Rule 12(b)(1) motion constituted factual attack because defendant relied on affidavit in support). And since Zaal does not contest the merits of Stakely's claims, the Court need not convert it to a Rule 56 motion because the jurisdictional issue Zaal raises is not "intertwined with the underlying substantive merits of the case." *Wright*, 1996 WL 172119, at *4; *see also Flores ex rel. J.F. v. Dist. of Columbia*, 437 F.Supp.2d 22, 27–28, n.11 (D.D.C. 2006) (collecting cases) (where defendant brings factual attack on complaint and the Court did not have to consider the merits to determine whether plaintiff's claims were moot, converting Rule 12(b)(1) motion to Rule 56 motion improper). Accordingly, this preliminary argument similarly fails.

### III.

Under § 207(a)(1) of the FLSA, employers must "compensate employees at one and one-half times their regular rate for each hour worked in excess of 40 hours per week." *Walsh v. KDE Equine, LLC*, 56 F.4th 409, 413 (6th Cir. 2022) (citing 29 U.S.C. § 207(a)(1)). If an employer violates this requirement, it "shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Moreover, the FLSA also provides that courts must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* The KWHA provides identical protections and remedies. *See* Ky. Rev. Stat. §§ 337.285(1), 337.385(1).

Zaal does not dispute that it failed to pay Stakely as required under the FLSA and KWHA. [*See* R. 8 at pgs. 11–12]. Rather, Zaal argues that Stakely's FLSA and KWHA claims should be dismissed as moot because it "tendered full and complete relief" to Stakely for these claims when it deposited $10,000 into her bank account. [R. 20-1 at pg. 9]. Zaal attempts to analogize its payment to Stakely with that of an offer of judgment, relying on several cases for the proposition that offers of judgment "may moot a plaintiff's claim under certain circumstances." [*See id.* at pgs. 6–7 (citing, *inter alia*, *Wesley v. Accessible Home Care*, Civil Action No. 5:18-200-DCR, 2018 WL 6424691, at *1 (E.D. Ky. Dec. 6, 2018))]. And if an offer of judgment may moot a plaintiff's claim, it contends, actual payment certainly can. [*See id.* at pg. 6 (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 174, 187 (2016)) (noting agreement between Justice Thomas' concurrence and Justice Alito's dissent that actual payment can moot a plaintiff's claim)].[1]

---

[1] Zaal cites dicta from Justice Thomas' concurrence and Justice Alito's dissent in *Campbell-Ewald*, but the majority opinion made clear that its ruling was not deciding exactly the sort of circumstances present here:

**a.**

Article III of the Constitution cabins the judiciary to resolving only "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (collecting cases) ("Federal courts are courts of limited jurisdiction."). This is "a cradle-to-grave requirement," meaning that a case or controversy must remain live throughout the duration of a case. *Fialka-Feldman v. Oakland Univ. Bd. of Tr.*, 639 F.3d 711, 713 (6th Cir. 2011). "If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation" such that there is no longer a live case or controversy for the courts to resolve, "the action can no longer proceed and must be dismissed as moot" for lack of subject-matter jurisdiction. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (internal quotations omitted) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)); *see also Jarrett v. United States*, 79 F.4th 675, 678 (6th Cir. 2023) (collecting cases). "The heavy burden of demonstrating mootness rests on the party claiming mootness." *Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513, 531 (6th Cir. 2001) (citing *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

Rule 68 of the Federal Rules of Civil Procedure permits a defendant to "serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." FED. R. CIV. P. 68(a). The Sixth Circuit has explained that, in order "[t]o moot a case or controversy between opposing parties, an offer of judgment must give the plaintiff *everything* [s]he has asked

---

> In sum, an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case . . . . We need not, and do not, now decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff . . . .

*Campbell-Ewald*, 577 U.S. at 166. Moreover, both Justice Thomas and Justice Alito recognized in their respective opinions that an actual payment made must *fully* satisfy the plaintiff's claims before they can be deemed moot. *See id.* at 173–74, 178. As is described in further detail below, Zaal's tender fails to fully satisfy Stakely's claims, so even if the dicta Zaal cites was controlling, it does not cut in its favor.

for as an individual." *Hrivnak v. NCO Portfolio Mgmt., Inc.*, 719 F.3d 564, 567 (6th Cir. 2013) (emphasis in original). In this context, then, "mootness occurs only when the offer is accepted or the defendant indeed offers to provide every form of individual relief the claimant seeks in the complaint." *Id.* at 568.

**b.**

Zaal's actual payment-offer of judgment analogy is not persuasive. Rather, Zaal's deposit into Stakely's account is more properly construed as merely offer to settle this case. Under Kentucky law,[2] "[a]n agreement to settle legal claims is essentially a contract subject to the rules of contract interpretation. It is valid if it satisfies the requirements associated with contracts generally, *i.e.*, offer and acceptance, full and complete terms, and consideration." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. Ct. App. 2002) (collecting cases). "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24.[3] Moreover, a valid offer must include terms which are "reasonably certain." Restatement (Second) of Contracts § 33(1).

Contemporaneously with its payment to Stakely, Zaal contacted counsel, stating that it had "paid the alleged amounts due on the overtime," and that it was working on a "global settlement response" in that regard. [*See* R. 21-1 at pg. 2]. Taken together, these actions demonstrate a manifestation of intent to resolve some of Stakely's claims, and the claims to be resolved are "reasonably certain" because the email correspondence identifies the claims which the payment was intended to resolve. [*Id.*]. It thus constitutes an offer to settle. But as plainly evidenced by

---

[2] For purposes of resolving this motion, the undersigned presumes that Kentucky law applies, as no facts before the Court indicate that any other law would apply.
[3] Kentucky courts frequently rely on the Restatement (Second) of Contracts for purposes of defining the elements of a contract. *See, e.g.*, *Furtula v. Univ. of Ky.*, 438 S.W.3d 303, 309 (Ky. 2014).

subsequent events, Stakely rejected the offer. [*See* R. 21-2 at pg. 1; R. 21-3 at pg. 1]. Thus, because Stakely rejected Zaal's settlement offer, Counts III, IV, and VII remain live controversies such that the Court retains subject-matter jurisdiction over them.

### c.

Even if the Court were to find Zaal's actual payment-offer of judgment analogy persuasive, the amount tendered does not give Stakely "*everything* [s]he has asked for as an individual." *Id.* at 567. In her complaint, Stakely sought, *inter alia*, compensatory damages, including unpaid wages and lost wages, liquidated damages, and interests, costs, and attorney's fees. [R. 1 at pg. 14]. Taking everything in her complaint as true regarding Counts III, IV, and VII, Zaal believed that $10,000 was sufficient to moot those claims because, based on the amount of wages she asserts she is owed and the FLSA and KWHA liquidated damages provisions, Stakely could only recover $8,461.20 for those claims.[4] [R. 20-1 at pg. 3]. But while $10,000 may appear to satisfy Stakely's requests for compensatory and liquidated damages with respect to Counts III, IV, and VII, Stakley also seeks costs and attorney's fees. [R. 1 at pg. 14].

The record reflects that Stakely paid a $405 filing fee to initiate this action, [R. 1], bringing the total to $8,866.20. This leaves a total of $1,133.80 to cover Stakely's attorney's fees. However, Stakely first filed her complaint in October 2024, and since then the parties conducted a Rule 26(f) conference, discovery, and they have also engaged in the present motion practice. [*See* R. 1; R. 16; R. 21; R. 21-1]. Under these circumstances, the Court cannot reasonably conclude that $1,133.80

---

[4] Specifically, Zaal "multiplied 14 hours of overtime, by 10 full weeks of work, at a rate of $30.29 per hour of overtime, to equal $4,240.60. It then doubled that amount, to $8,481.20, to account for" the liquidated damages provisions in § 216(b) of the FLSA and § 337.385(1) of the KWHA. [R. 20-1 at pg. 3]. "To that amount, Zaal then applied 6% interest, compounded annually, for the two (2) years between when Stakely last worked for Zaal," which brought the total to $9,529.48. [*Id.*]. Zaal then rounded up to $10,000 "to ensure that the payment more than covered any small, additional interest amounts that Stakely could have received." [*Id.*].

is sufficient to cover over a year's worth of reasonable attorney's fees in this matter.[5] And while Zaal avers that Stakely is not entitled to attorney's fees, "[a]n offer limited to the relief the *defendant* believes is appropriate does not suffice" to moot these claims. *Hrivnak*, 719 F.3d at 567 (emphasis in original); *see also Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 616 (6th Cir. 2021) (citing 29 U.S.C. § 216(b)) (noting that an award of reasonable attorney's fees is "mandatory under the FLSA"). Indeed, "[t]he question is whether the defendant is willing to meet the plaintiff on [her] terms." *Hrivnak*, 719 F.3d at 567 (citation omitted). Given the present motion practice and Stakely's insistence that Zaal's tendered amount does not fully satisfy her claims under Counts III, IV, and VII, [R. 21], the answer to that question here is plainly no: Zaal's offer does not meet Stakely on her terms. Accordingly, even if Zaal's actual payment-offer of judgment analogy was persuasive, the amount tendered here does not moot Counts III, IV, and VII because it does not satisfy all of Stakely's demands for relief. *Mey v. N. Am. Bancard, LLC*, 655 Fed.Appx. 332, 336 (6th Cir. 2016) (citation omitted) ("Even if we assume that an unaccepted cashier's check could moot a claim, [the defendant] has not shown that its tender satisfies [the plaintiff's] demand for relief, which the tender must do if it is to moot [plaintiff's] individual claims."); *see also Ward v. Bank of New York*, 455 F.Supp.2d 262, 267–68 (S.D.N.Y. 2006) (citing various district court cases from Second, Fifth, Seventh, and Eleventh Circuits) ("Courts have, however, denied a defendant's motion to dismiss on mootness grounds where the plaintiff potentially could recover more than the relief offered by defendant, such as where the offer is not comprehensive, or where the amount due to plaintiff is disputed."). Accordingly, having considered the matter, and being sufficiently advised,

**IT IS ORDERED** that Defendant Zaal Venture's motion to dismiss, [R. 20], is **DENIED**.

---

[5] Neither party attempts to quantify the attorney's fees at issue, so the Court will not attempt to calculate them. Should the parties wish to raise this issue in a subsequent motion, they may do so.

Signed December 3, 2025.

